ROGERS *v.* DICKEY, guardian.

1. If it be to the interest of minors that property belonging to their father's estate should be distributed in kind instead of being sold, the guardian should file a caveat when the administrator applies for leave to sell for the purpose of paying debts and making distribution.

2. At such a sale the responsibility of preventing a sacrifice of the property is not upon the guardian, but upon the administrator, who can withdraw the property if it does not bring its fair market value.

3. Even for the benefit of the beneficiaries a fiduciary can not hazard the trust fund in speculation, business, or any form of investment not authorized by the deed of trust, the statute, or an order of a court of competent jurisdiction.

4. If trustees use trust funds in a manner not authorized by law, they assume all the risks of the venture, and must bear all losses; but, being prohibited from making personal gain out of the property of the beneficiaries, they are chargeable with all profits and increase arising from the irregular or illegal venture.

5. Without an order or decree authorizing a guardian to invest, he can not purchase shares of stock belonging to the estate of the ward's ancestor, when offered at administrator's sale.

6. If, without proper order, he purchases at such sale and takes a transfer of the stock to himself as guardian, a court of equity, a succeeding guardian, or the beneficiaries on obtaining majority may ratify in case the property increases in value or remains of the same value, or they may disaffirm the purchase in case the same depreciates or becomes worthless.

7. Where a guardian without authority purchases stock in his representative capacity, and the administrator charges himself with the amount of the bid, and credits himself with the same sum, for which the guardian gives a receipt,

the guardian is liable for the money so acknowledged by him to have been received from the administrator, and on a settlement can not by producing the stock discharge himself from liability for the cash.

Argued June 4,—Decided June 27, 1903.

Citation for settlement — appeal.    Before Judge Reagan.    Pike superior court.    January 19, 1903.

*Estes & Jones,* for plaintiff in error.

*E. F. Dupree* and *W. H. Wallace,* contra.

LAMAR, J.    In a proceeding for a settlement and accounting there was a verdict against the guardian for $3,431.    He moved for a new trial, because of rulings under which he was denied credit for fifteen shares of factory stock and twenty shares of bank stock. It appeared that his wards were the only heirs at law of S. N. Woodward, whose administrator applied for leave to sell the real and personal property for the purpose of paying debts and making distribution.    This stock was offered, and when other parties began to bid, J. J. Rogers, guardian, stated that he was buying for the interest of his wards; whereupon the other bidders withdrew, and Rogers bought the factory stock for $1,500, and the bank stock for $1,000.    The administrator charged himself with these amounts as having been received from Rogers, and on proper voucher credited himself with the same amounts as paid to Rogers, guardian.    At the time of the sale the stock in both these companies was valuable.    The bank, however, was subsequently placed in the hands of a receiver, and its stock became utterly worthless; while the factory stock became practically valueless.    Rogers having been removed, Dickey was appointed as guardian to succeed him, and obtained the verdict above referred to in a proceeding against Rogers for a settlement and accounting.    The plaintiff in error insists that there were no debts of the estate of S. N. Woodward; that the minors were the sole heirs at law; that the stock really belonged to them, and the sale was really a means of transferring the title from the administrator to the guardian, so as to protect the corporations in making the transfer; that all of the relatives of the minors were extremely anxious for this stock to be saved for the children on account of its then value, and went so far as to notify the officers of the bank not to issue the new scrip to Rogers individually; and that for the factory stock was issued to him as guardian for the children.

The Civil Code, § 3479, provides how an administrator may divide in kind; and when he applied for leave to sell for the purpose of paying debts and making a distribution, the guardian should then have interposed a caveat, if it was to the interest of his wards that there should be no sale.    The judgment of the ordinary is conclusive of the question as to the necessity and desirability of such a sale.    The guardian had no cash in hand for investment, nor did he have an order permitting him to buy bank or factory stock.    Consequently his bid was unauthorized, and the sale, while nominally to him as guardian, was really to him as an individual. The transaction was equivalent to his buying the stock, paying the money to the administrator, and the administrator at once paying back the amount bid to the guardian.    With that sum he is chargeable on the accounting.    No matter how great his good faith, or how urgent the desire on the part of relatives for the funds to be invested in these stocks, he can not relieve himself of his liability for the funds without the production of an order authorizing such an investment.    Civil Code, §§ 3180, 3181, 2550.    Nor would it be any answer for him to say that but for his bidding the stock might have been sacrificed.    It is not the duty of the guardian so to bid as to make property in the hands of an administrator bring its full value; for ordinarily the duty of seeing that the property is not sacrificed is upon the officer who is conducting the sale.  Usually the price realized at public outcry at a properly conducted sale is evidence of its value; and if for any reason it was likely to be sacrificed, it was for the administrator to have put an upset price, or to have withdrawn the stock, and either at another sale dispose of the same, or, if preferable, institute proceedings for a distribution in kind.    The creditors of the estate were also interested; and this case affords an illustration of the necessity of the property being properly sold, for from the evidence it would likely have realized its market value but for the fact that the guardian chilled the bids by the statement that he was purchasing for the interest of the wards.

If a trustee holds a debt or lien which can only be collected out of particular property, he might be liable if he negligently allowed the property to be sold for much less than the value of the estate's interest instead of purchasing the property and having his bid credited on the execution.    But this is not such a case.    The guardian had

no special interest in the stock as such ;he was only entitled to what was left of the estate after the payment of debts, and the administrator was the officer charged by law with the duty of conducting the sale and preventing a sacrifice of the assets. No doubt many fiduciaries with the best of motives, and to the advantage of their cestuis que trust, have often bought property under circumstances similar to those set out above. But they have found their protection in the favorable result rather than in the judgment of the law. It is but one of the many illustrations of the rule that when those in charge of the property rights of others depart from the letter of the law, they assume all the risks and must bear all the loss; while the beneficiaries may elect to affirm what has been irregularly or illegally done, and claim all the gains and advantages arising therefrom. Of course the trustee can never be allowed to derive a personal advantage from the use of his principal's property (Civil Code, §§ 3183, 3011, 3415); nor can he on the other hand hazard their funds in speculation, business, or any form of investment other than that authorized by the deed of trust, the statute, or an order of a court of competent jurisdiction. On a final settlement he must account for every dollar of the corpus with all profits, legal or illegal, thereon; and he can not discharge himself by showing that in good faith and with the best of motives he had invested in property not authorized by law, even though at the time it was deemed by prudent men a wise use of the money. If, as a result of following the law, the profits are small, he can not be held liable for what he might otherwise have made; but if for the purpose of increasing the profits he departs from the law, he can expect no protection from it when loss and disaster follow. Civil Code, § 3170.

*Judgment affirmed. All the Justices concur.*